UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN B.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 18-5597-RJB-BAT

**REPORT AND RECOMMENDATION**

Plaintiff seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends the ALJ erred by discounting her testimony and certain medical opinions. Dkt. 13 at 1. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

Plaintiff is currently 59 years old, has an 8th grade education and vocational training in business, and has worked as a cook, kitchen coordinator, receptionist, housekeeper, and homeless shelter support staff. Tr. 127, 321. In October 2012, she protectively applied for benefits, alleging disability as of August 31, 2012. Tr. 284-99. Her applications were denied initially and on reconsideration. Tr. 207-10, 214-32. The ALJ conducted a hearing on

REPORT AND RECOMMENDATION - 1

November 24, 2014 (Tr. 119-48), and subsequently found Plaintiff not disabled. Tr. 104-13. The Appeals Council denied Plaintiff's request for review (Tr. 1-7), and Plaintiff appealed to this Court, which reversed the ALJ's decision and remanded for further proceedings. Tr. 840-49.

The ALJ held another hearing on December 28, 2017 (Tr. 1663-88), and subsequently found Plaintiff not disabled prior to February 8, 2017. Tr. 774-94. Plaintiff now seeks judicial review of that decision.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

**Step two:** Plaintiff's chronic obstructive pulmonary disease, asthma, obesity, depression, posttraumatic stress disorder ("PTSD"), and personality disorder are severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work as follows: she can lift/carry/push/pull 10 pounds frequently and 20 pounds occasionally. She can stand and walk 15 minutes at one time up to two hours total in an eight-hour workday, and has no sitting restrictions. She can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She should avoid concentrated exposure to extreme cold and wetness and to hazards (such as unprotected heights and exposed moving mechanical parts). She should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. She can understand and remember simple three-step instructions and has sufficient concentration, persistence, and pace to complete simple, routine tasks for a normal workday and workweek with normal breaks, except she may be off-task 5% of the time or less. She can occasionally interact with co-workers and the general public. She should have no over-the-shoulder supervision and a non-confrontational supervisor. She should be in a workplace with routine changes to the work setting.

**Step four:** Plaintiff cannot perform her past work.

**Step five:** There are jobs that exist in significant numbers in the national economy that Plaintiff could perform before February 8, 2017. But as of February 8, 2017, she could

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

no longer perform any jobs that exist in significant numbers in the national economy, and therefore she became disabled as of that date.

Tr. 774-94.

## DISCUSSION

During the second administrative hearing, before Plaintiff was present but after the recording equipment was started, the ALJ offered commentary that casts serious doubt on the ALJ's ability to view the evidence in this case objectively. Plaintiff's counsel indicated that the updated record on remand included an opinion from consultative examiner Peter Weiss, Ph.D., and the ALJ responded:

> You know, I don't give much – you know, frankly, I know the two Dr. Weiss'. They are related. One is the father and one is the son. . . . I find their opinions to be worthless, frankly, both of them, absolutely worthless. You know, I have never ever seen them – never ever have I seen an opinion from either one of them that didn't think that absolutely every person, including you, me and our Court reporter, all of us who are working just fine, would not find us all completely incapable of working. You know, it is an unfortunate fact, that their two opinions, so that gives me nothing.

Tr. 1667-68. The ALJ and Plaintiff's counsel went on to discuss whether Plaintiff would testify at the hearing:

> [Counsel]: . . . I'm sure [Plaintiff] would like the chance to tell you about what's gone in the couple years since (the last hearing), just to update.
>
> . . .
>
> [ALJ]: I'm happy to listen to her. You know, I'm not likely to change . . . my opinion much, you know, and part of the problem is when people go out there and try to convince a – you know, get their counselor to give them an opinion, that sort of colors my look at things, so . . . which doesn't mean I can't be persuaded. It's just that there is always that, so.

Tr. 1668-69. This commentary regarding the ALJ's past experience with Dr. Weiss, as well as her perception of claimants who request opinions from their treating sources, explicitly suggests

REPORT AND RECOMMENDATION - 3

that the ALJ was improperly influenced by her own prejudice and issues outside the record in this case. *See Wentworth v. Barnhart*, 71 Fed. Appx. 727, 728-29 (9th Cir. 2003) (finding that the ALJ's prejudice against Plaintiff's physician as "a plaintiff's doctor who reports what he is paid to say, i.e., disability" tainted the disability determination, despite providing other potentially legally sufficient reasons to discount the doctor's opinion); *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (holding that, in the absence of evidence of "actual improprieties," an ALJ may not discount an opinion because it was procured by the claimant). The ALJ's hearing commentary amply overcomes the presumption that ALJs are unbiased. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1215 (9th Cir. 2005) (indicating that in evaluating an ALJ's potential bias, the court "must begin with a presumption that the ALJ was unbiased"). The ALJ's comments at the hearing, particularly regarding Dr. Weiss, were "so extreme as to display clear inability to render fair judgment." *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001).

The ALJ's decision does state specific reasons for discounting Plaintiff's testimony, as well as opinions written by Dr. Weiss and Plaintiff's treating counselors, but the Court cannot find that the evidence in Plaintiff's case was fairly considered by the ALJ, in light of the explicit prejudice expressed during the administrative hearing. As a result, the Court is not persuaded that the ALJ's bias is harmless. *See Wentworth*, 71 Fed. Appx. at 728-29 (finding that the ALJ's prejudice against Plaintiff's physician tainted the entire disability determination, even though the ALJ provided other potentially legally sufficient reasons to discount the doctor's opinion).

Plaintiff is entitled to a new hearing before a different ALJ. *See* Hearings, Appeals and Litigation Law Manual I-4-6-30(B)(10) (indicating that remands are generally assigned to the same ALJ, unless a court finds that the claimant did not receive a full and fair hearing, or if the case had already been remanded to the same ALJ previously).

REPORT AND RECOMMENDATION - 4

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should assign this case to a different ALJ, who shall hold a new hearing, reconsider the entire record, and issue a new decision.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **April 2, 2019.** If no objections are filed, the Clerk shall note the matter for **April 5, 2019** as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed eight pages. The failure to timely object may affect the right to appeal.

DATED this 19th day of March, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge